**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4315-16T2

IN THE MATTER OF

WEST ORANGE BOARD OF EDUCATION,

    Petitioner-Respondent,

v.

WEST ORANGE EDUCATION ASSOCIATION,

    Respondent-Appellant.

_____

Submitted January 8, 2018 – Decided July 25, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from the Public Employment
Relations Commission, Docket No. SN-2017-
013.

Zazzali, Fagella, Nowak, Kleinbaum &
Friedman, attorneys for appellant (Genevieve
Murphy-Bradacs, on the briefs).

Cleary Giacobbe Alfieri & Jacobs, LLC,
attorneys for respondent (Matthew J.
Giacobbe and Gregory J. Franklin, on the
brief).

Christine Lucarelli-Carneiro, Acting General
Counsel, attorney for respondent New Jersey
Public Employment Relations Commission
(David N. Gambert, Deputy General Counsel,
on the statement in lieu of brief.)

PER CURIAM

Following expiration of its collective negotiations agreement with the West Orange Education Association, the West Orange Board of Education filed a scope petition with the Public Employment Relations Commission asserting certain provisions of the expired agreement were not mandatorily negotiable and should be stricken from any successor agreement. Among those provisions was Article XV, Section B (entitled "Supplementary Sick Leave"), which provided:

> Full-time employees shall be credited with five (5) days supplementary sick leave allowance for each year of service, with unused days to be accumulated. Full-time employees who have exhausted their regular sick leave may utilize the accumulated supplementary sick leave to the extent necessary to provide total compensation of up to three (3) days beyond this period in any month wherein less than three (3) days' compensation has been earned.

The Board argued the provision was an extended sick leave benefits clause preempted by N.J.S.A. 18A:30-6.[1] The Association

---

[1]  N.J.S.A. 18A:30-6 provides:

> When absence, under the circumstances described in section 18A:30-1 of this article, exceeds the annual sick leave and the accumulated sick leave, the board of education may pay any such person each day's salary less the pay of a substitute, if a substitute is employed or the estimated cost

(continued)

countered that notwithstanding the wording of the provision and its reference to "sick days," "the sole purpose of Article XV, Section B was to codify the parties' longstanding past practice of providing employees with 'insurance days' based on years of service that could be used to continue their health benefits during unpaid leaves of absence."[2]  The Association contended there was no dispute that provision of health benefits coverage during unpaid leaves of absence was a mandatorily negotiable

---

(continued)
> of the employment of a substitute if none is employed, for such length of time <u>as may be determined by the board of education in each individual case.</u> A day's salary is defined as 1/200 of the annual salary.
>
> [Emphasis supplied.]

[2]  In a certification submitted to PERC, the president of the Association explained that over the last many years, all full-time employees have been allowed to accumulate five so-called "insurance days" for each year of service annually.  Use of three of those days entitled an employee to the Board's portion of the health premium for one calendar month.  Thus, an employee with six years' service was entitled to thirty "insurance days," which could be used to continue the Board's contribution to the employee's health premium for ten months while on unpaid leave.

Based on PERC's 1992 decision, which notes the supplementary sick leave provision became part of the parties' CNA beginning in the 1960-61 school year, counsel for PERC speculates the clause mutated "into the alleged past practice of providing solely for the 'insurance days'" after the blanket award of supplementary sick days was preempted by the enactment of N.J.S.A. 18A:30-6 in 1967.

subject, relying on a 1992 PERC decision against the Board in the Association's favor so holding.

PERC ruled for the Board, finding that although health benefits during periods of unpaid leave is a negotiable topic, the Association "cannot achieve such a contractual benefit in the guise of supplementary sick leave that allows for extra paid sick leave days to be earned and utilized via blanket rule rather than per the Board's discretion within the constraints of N.J.S.A. 18A:30-6." It distinguished its prior decision, which arose in the context of a grievance arbitration, because there, "application of the relevant contract clause was confined to the known circumstances of the issues sought to be arbitrated." Although acknowledging that the supplementary sick leave provision in that case was "nearly identical" to Article XV, Section B, PERC found the issue in the prior case "was whether the Board violated the contract 'when it discontinued health insurance benefits for employees on unpaid leaves of absence.'"

The Association moved for reconsideration arguing that after PERC's decision of June 30, 2016, "the Board has advised that it will no longer honor the parties' longstanding contractual agreement to allow employees to use their accumulated 'supplementary sick leave' to continue their health benefits while on unpaid leaves of absence." The Association

complained the Board acted notwithstanding "that such an agreement involves a mandatorily negotiable term and condition of employment" and that "there is not now, nor has there ever been, any other permissible use for supplementary sick leave days provided by the parties' agreement other than for the continuation of health benefits during an unpaid leave of absence."[3]

PERC, although noting "employers may not unilaterally change prevailing terms and conditions of employment," whether established by agreement or past practice, as doing so "would circumvent the statutory duty to bargain," see Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, 78 N.J. 25, 48 (1978), agreed with the Board the Association had not established a basis for reconsideration.

The Association did not appeal those rulings. Two weeks later, however, it filed a grievance on behalf of a member denied the use of supplementary sick days to secure continuation of her health benefits during an extended unpaid leave. The Board denied the grievance relying on PERC's decision striking

---

[3] The Board disputes that, contending the CNA further obligated it to a $5000 "opt-out waiver payment" for employees foregoing such coverage. As our disposition does not rest on these grounds, we have no need to resolve the parties' dispute on the point.

Article XV, Section B and PERC's rejection of the Association's past practice argument on reconsideration.

When the Association demanded the issue be placed before a panel of arbitrators, the Board filed a scope petition with PERC seeking to restrain arbitration. The Association argued PERC's decision striking Article XV, Section B was not controlling as that matter turned on a negotiability analysis, not the arbitrability analysis required here. PERC rejected the argument that whatever distinction might exist between arbitrability and negotiability could result in the past practice of awarding health insurance days remaining arbitrable despite the striking of the parties' supplementary sick leave clause. Finding it undisputed, based on its prior decisions and the Association president's certification, that "the past practice regarding 'insurance days' was solely rooted" in Article XV, Section B, PERC determined its removal left the past practice "without any foundation and . . . effectively eliminated."

On appeal, the Association reprises the arguments it made to PERC that the continuation of health insurance benefits for employees on unpaid leaves of absence is a mandatorily negotiable term and condition of employment, and adds that PERC exceeded its jurisdiction when it failed to limit its inquiry to

whether the subject matter of the grievance involved a mandatorily negotiable term and condition of employment. We disagree.

The Association's argument is premised on a proposition neither the Board nor PERC disputes, that health coverage for employees during unpaid leaves of absence is a mandatorily negotiable term of employment. Thus, if one squints at the issues so that it is the only one visible, the question might appear initially to meet the test for negotiability established in In re Local 195, IFPTE, 88 N.J. 393, 404-05 (1982), that is, involve (1) an "item [that] intimately and directly affects the work and welfare of public employees"; (2) that "has not been fully or partially preempted by statute or regulation"; and (3) involves a matter where "a negotiated agreement would not significantly interfere with the determination of governmental policy." But so myopic a focus blurs, not sharpens, the dispute the parties presented to PERC.

PERC struck Article XV, Section B because it is plainly preempted by N.J.S.A. 18A:30-6, rejecting the Association's position that the clause, although worded as a supplementary sick leave provision, was actually only a mechanism for the provision of health benefits during a period of unpaid leave, a well-settled negotiable term of employment. PERC acknowledged

the parties were free to negotiate for the provision of health coverage during leave, but ruled the Association could not "achieve such a contractual benefit in the guise of [a] supplementary sick leave" term preempted by statute — a proposition the Association effectively conceded by failing to appeal PERC's decision striking the clause from the parties' Agreement.

Permitting the Association to arbitrate the Board's denial of a member's request to use her supplemental sick days to secure paid health benefits based on the past practice established under Article XV, Section B would effectively nullify PERC's ruling striking the provision from the parties' contract. The clause, although stricken from the Agreement, would continue to live on, enforceable as past practice notwithstanding that the clause, and thus the practice, has been preempted by legislation, a result clearly contrary to law. See State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 81-82 (1978) (holding "where a statute or regulation sets a maximum level of rights or benefits for employees on a particular term and condition of employment, no proposal to affect that maximum is negotiable nor would any contractual provision purporting to do so be enforceable").

We accordingly can find no error, much less reversible error, in PERC's determination that excising the supplementary sick leave provision from the Agreement prevented the union from relying on the past practice of permitting District employees to compel the District to provide paid health benefits on the basis of supplementary sick days awarded on other than the case-by-case basis permitted by N.J.S.A. 18A:30-6. See City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 568 (1998) (directing that a decision by PERC concerning the scope of negotiations will stand unless clearly demonstrated to be arbitrary or capricious).

Moreover, as observed by PERC's counsel on appeal, and not disputed by the Association, N.J.S.A. 18A:16-16, the statute on which the Association relies to establish the negotiability of health benefits during periods of leave, conditions such coverage on an express contractual provision negotiated by the parties.[4] PERC having struck Article XV, Section B from the

_____

[4] N.J.S.A. 18A:16-16 provides:

> The coverage of any employee, and of his dependents, if any, shall cease upon the discontinuance of his employment or upon cessation of active full-time employment in the classes eligible for coverage subject to such provision as may be made in any contract made by the local board of

(continued)

parties' Agreement, N.J.S.A. 18A:16-16 preempts the Association's reliance on past practice alone to establish an employee's entitlement to continued health benefits while on unpaid leave. The parties are free to negotiate for health coverage during periods of unpaid leave; PERC's decision, which we affirm, only requires they do so within the parameters established by the Legislature in N.J.S.A. 18A:30-6 and N.J.S.A. 18A:16-16.

    Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

(continued)
    education <u>for limited continuance of
coverage during</u> disability, part-time
employment, <u>leave of absence other than
leave for military service</u>, and for
continuance of coverage after retirement.

    [Emphasis supplied.]